UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GARY C.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. C19-5927-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in assessing the medical evidence, and in discounting Plaintiff's testimony and the lay statements. (Dkt. # 11 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1960, has a high school diploma and some college education, and previously worked for the city of Tacoma as a civil engineering technician, IT supervisor, and IT manager. AR at 50, 52. Plaintiff last posted earnings in 2011. *Id*. at 204-05.

ORDER - 1

In July 2016, Plaintiff applied for benefits, alleging disability as of October 1, 2010.[1] AR at 195-98. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 126-28, 132-40. After the ALJ conducted a hearing on April 24, 2018 (*id*. at 37-95), the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 13-29.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

> Step one: Plaintiff had worked, but had not engaged in substantial gainful activity between his alleged onset date and his date last insured ("DLI").
>
> Step two: Through the DLI, Plaintiff's Parkinson's disease was a severe impairment.
>
> Step three: Through the DLI, this impairment did not meet or equal the requirements of a listed impairment.[3]
>
> Residual Functional Capacity ("RFC"): Through the DLI, Plaintiff could perform light work, with additional restrictions: he could not climb ladders, ropes, and scaffolds. He could occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl. He could reach overhead bilaterally on a no more than occasional basis. He could freqeuently handle, finger, and feel bilaterally. He was able to work in an environment that allowed him to avoid exposure to wetness, vibration, and hazards as defined in the Dictionary of Occupational Titles.
>
> Step four: Through the DLI, Plaintiff was capable of performing his past relevant work as a computer operations supervisor and computer operations manager. Therefore, he is not disabled.

AR at 13-29.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

---

[1] Plaintiff subsequently amended his alleged onset date to April 1, 2015. AR at 42.
[2] 20 C.F.R. § 404.1520.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV.   DISCUSSION

### A.   The ALJ Did Not Err in Assessing the Medical Opinion Evidence

Plaintiff challenges the ALJ's assessment of opinions written by treating neurologist John Huddlestone, M.D., and consultative psychological examiner Brett Valette, Ph.D. The Court will consider each opinion in turn.

#### 1.   Legal Standards

Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th

1  Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where

2  contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and

3  legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d

4  at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

    2.   *Dr. Huddlestone*

6  Prior to December 2013, Dr. Huddlestone treated Plaintiff for his Parkinson's disease, but

7  at that point Plaintiff transferred his care to a Parkinson's specialist. AR at 472-73. Plaintiff

8  returned to Dr. Huddlestone in March 2016, after discontinuing treatment with other providers,

9  and continued to return to Dr. Huddlestone for follow-up until February 2018, when he began

10 treatment with a new Parkinson's specialist. *Id*. at 472-73, 697, 779-90.

11 Dr. Huddlestone provided opinions regarding Plaintiff's functional limitations in January

12 2017 and April 2018, indicating that prior to June 2016, Plaintiff was unable to work. AR at 712-

13 13, 801-06. The ALJ gave little weight to Dr. Huddlestone's opinions beause Dr. Huddlestone

14 did not treat Plaintiff during most of the adjudicated period, and because his opinions were based

15 on Plaintiff's self-reported limitations and inconsistent with the medical evidence dating to the

16 adjudicated period, specifically Plaintiff's reports to his provider that he was working as a

17 handyman during that time. *Id*. at 26-27.

18 Plaintiff argues that he ALJ erred in finding that he had had a gap in treatment, because

19 Dr. Huddlestone was aware of Plaintiff's condition "before, during, and after the relevant

20 period." (Dkt. # 11 at 6.) Dr. Huddlestone did begin treating Plaintiff in the last few months of

21 the adjudicated period, but during most of the adjudicated period, as the ALJ found, Plaintiff's

22 Parkinson's disease was treated by other providers. Furthermore, as noted by the ALJ, Dr.

23 Huddlestone's opinions overstate limitations that Plaintiff did not experience during the

adjudicated period, such as hallucinations and memory deficits. *See, e.g.*, AR at 472 (mild hallucinations that cause no problems), 473 (no hallucinations), 483 (same), 536-37 (hallucinations only when he gets up to go to the bathroom in the middle of the night), 553 (same), 568 (no hallucinations), 703 (same), 722 (same), 754 (normal results on memory testing), 758 (night hallucinations as a medication side effect), 780-81 (night hallucinations), 1232 (no hallucinations).

Moreover, as the ALJ noted, Plaintiff told providers during the adjudicated period that he was working "odds and ends jobs" as a handyman (AR at 468, 477, 480), and although he claimed at the administrative hearing that this "handyman" work referred to home repairs on his own house and a house his father purchased (*id.* at 59-61), the ALJ's interpretation of these statements as describing more substantial work for pay (*id.* at 60) is nonetheless reasonable. Such work (arguably even if it was limited to work on his own home and his father's house) would be inconsistent with the limitations that Dr. Huddlestone described as to Plaintiff's inability to lift, carry, walk, or handle. *See id.* at 712-13.

In light of the inconsistencies the ALJ reasonably found between Dr. Huddlestone's opinions and Plaintiff's records and activities dating to the adjudicated period, the ALJ did not err in discounting Dr. Huddlestone's opinions on those bases. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

        3.    Dr. Valette

Dr. Valette examined Plaintiff in October 2016, approximately four months after the DLI. AR at 656-62. The ALJ summarized Dr. Valette's opinion, but indicated that she did not consider it in formulating the RFC assessment because it "significantly post-dates" the DLI. *Id.*

at 26.

Plaintiff disputes whether four months constitutes a "significant" period of time, and contends that Ninth Circuit authority indicates that the timing of a post-DLI opinion alone is not a sufficient reason to discount a medical opinion. (Dkt. # 11 at 8.) Indeed, Plaintiff relies on a published 9th Circuit cases holding that because medical opinions are inevitably written retrospectively, the fact that an opinion post-dates a claimant's DLI does not alone render it irrelevant to an evaluation of the claimant's pre-DLI condition. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 n.3 (9th Cir. 2007); *Smith v. Bowen*, 849 F.2d 1222, 1225-26 (9th Cir. 1988). The Commissioner points to other cases, and the Court is aware of others, indicating that a post-DLI opinion can be found irrelevant to the adjudicated period if the opinion is not rendered retrospectively, or if the opinion is inconsistent with the medical evidence dating to the adjudicated period, or if there had been an intervening event causing the claimant's condition to deteriorate after the DLI and before the opinion was written. *See, e.g.*, *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *Watkins v. Astrue*, 357 Fed. Appx. 784, 796 (9th Cir. Nov. 19, 2009); *Capobres v. Astrue*, 2011 WL 1114256, at *5 (D. Ida. Mar. 25, 2011).

In this case, Dr. Valette examined Plaintiff for the first time post-DLI and did not refer to any specific records dating to the adjudicated period in rendering his opinion, and the earlier cognitive testing yielded normal results. *See* AR at 455-65, 754. Furthermore, Dr. Valette wrote his conclusions in the present tense and did not purport to address the adjudicated period. Under these circumstances, the ALJ did not err in relying on the timing of Dr. Valette's opinion as a reason to discount it. This case is distinguishable from *Smith* because Dr. Valette's opinion bears no indicia of retrospective applicability. Under these circumstances, Plaintiff has not shown that the ALJ erred in finding that Dr. Valette's opinion did not pertain to the adjudicated period and

discounting it on that basis. *See, e.g.*, *Herman v. Astrue*, 2012 WL 5878235, at *3 (C.D. Cal. Nov. 20, 2012) ("Though medical opinions can be retroactive, there is nothing to suggest that is the case here." (citing *Smith*, 849 F.2d at 1225)).

**B.    The ALJ Did Not Err in Discounting Plaintiff's Subjective Statements**

The ALJ discounted Plaintiff's subjective testimony because: (1) the objective medical evidence contradicted his allegations of disabling impairments, (2) he failed to comply with recommended treatment, and (3) he received minimal treatment for his allegedly severe neck pain. AR at 28. Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). The Court will address each of the ALJ's reasons in turn.

*1.    Objective Medical Evidence*

The ALJ found that the objective medical evidence showed that during the adjudicated period, Plaintiff retained the ability to perform work activities and his allegations of disability were therefore unsupported. AR at 28. The ALJ referred to her discussion of treatment notes (*id*. (referencing *id*. at 22-26)) as the evidence inconsistent with Plaintiff's allegations.

As the Commissioner notes (dkt. # 12 at 4), Plaintiff's opening brief does not directly challenge this line of the ALJ's reasoning. Plaintiff devotes most of this section of his brief arguing that his activities are not actually inconsistent with his allegations (dkt. # 11 at 10 ("The ALJ focused heavily on [Plaintiff's] activities when rejecting his testimony."), but the ALJ did not point to Plaintiff's activities when finding that the record did not support his allegations of disability. Instead, the ALJ referenced findings regarding the treatment notes, which showed that Plaintiff's Parkinson's symptoms improved with medication, when measured objectively upon examination. AR at 22-26. The ALJ also noted that Plaintiff complained of cognitive problems,

ORDER - 7

but then cognitive testing yielded normal results. *Id.* at 28 (citing *id.* at 754). Plaintiff has not shown that this line of reasoning is erroneous, and it supports the ALJ's assessment of Plaintiff's disability allegations.

### 2. *Failure to Comply*

The ALJ noted that on several occasions, Plaintiff modified his medication regimen on his own without informing his doctors. AR at 23, 25. The ALJ found that this lack of compliance with treatment recommendations "certainly would affect the severity of his symptoms and he admitted to his providers that his symptoms worsened significantly when he was off his medications." *Id*. at 28. Plaintiff claims that the ALJ erred by failing to consider that Plaintiff modified his medication regimen due to nausea side effects (dkt. # 11 at 11-12), but the record does not indicate that Plaintiff reported this rationale to his providers until after the DLI, and in any event his providers indicated that modifciations could be made to reduce the medication side effects. *See, e.g.*, AR at 481 (Plaintiff cited "grave distrust of chemicals" as the reason why he stopped taking his medication as prescribed), 519 (Plaintiff increased his medication without his doctor's permission and his doctor instructed him not to do so in the future), 720-23 (Plaintiff stopped taking his medications in October 2016 due to side effects as well as a desire to determine how far his disease had progressed and to determine if other treatments were effective, and his doctor advised that if medications are taken in the proper balance, the problems caused by the medications are "controllable"). Plaintiff has not shown that the ALJ's interpretation of this evidence is erroneous.

### 3. *Neck pain*

The ALJ also noted that Plaintiff complained of severe neck pain (AR at 59), although he did not seek treatment for this condition, despite his insurance coverage and access to doctors. *Id.*

ORDER - 8

at 28. Plaintiff's opening brief does not challenge this line of the ALJ's reasoning. The ALJ did not err in discounting Plaintiff's allegations based on Plaintiff's failure to seek treatment for issues he contends are disabling. *See, e.g.*, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ may consider a claimant's inconsistent or non-existent reporting of symptoms); *Tommasetti*, 533 F.3d at 1039 (indicating that an ALJ properly considers a claimant's unexplained or inadequately explained failure to seek or follow through with treatment, in assessing a claimant's allegations).

In sum, Plaintiff has failed to meet his burden to show harmful legal error in the ALJ's assessment of his testimony, and the Court therefore affirms this portion of the ALJ's decision.

### C.   The ALJ Did Not Harmfully Err in Discounting Lay Statements

The record contains several statements written by Plaintiff's friends and family. AR at 237-49, 261, 263-74. The ALJ discounted these statements as written by laypeople, rather than those trained to make medical observations, who were influenced by their relationship to Plaintiff. *Id*. at 27-28. The ALJ also found that the limitations the lay witnesses described were inconsistent with Plaintiff's ability to walk two miles every day and occasionally play golf. *Id*. at 28.

An ALJ's reasons to discount lay statements must be germane. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."). The Commissioner concedes that the ALJ's reasons were not germane (dkt. # 12 at 5-6), but argues that the ALJ's error was harmless because the lay statements reference similar limitations as Plaintiff himself described, and the ALJ's valid reasons to discount Plaintiff's testimony apply with equal force to the lay statements.

The Court agrees, because, as explained *supra*, the ALJ properly found that Plaintiff's allegations were undermined by the objective medical evidence, Plaintiff's intermittent non-compliance with treatment recommendations, and Plaintiff's lack of treatment for his neck pain. Plaintiff does not dispute that the lay statements are similar to Plaintiff's allegations. The ALJ provided valid reasons to discount the physical and cognitive limitations that Plaintiff described, and because the lay witnesses described similar limitations, the ALJ's reasons to discount Plaintiff's testimony apply equally to the lay statements. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"). Accordingly, the error in the ALJ's reasons for discounting the lay statements is harmless.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 26th day of May, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge